Good morning, your honors. My name is Anjali Prakash and I am a teaching fellow at the Georgetown Appellate Litigation Program. I'd like to introduce my student, Jennifer Safstrom. Ms. Safstrom will be arguing the case as student counsel on behalf of and with the permission of appellant Robert Barnes. Thank you. Thank you. Ms. Safstrom, welcome to the Fourth Circuit. Good morning and may it please the court. In this case, the sentencing court ordered a federal sentence that was concurrent with the entirety of the prior state sentence. The sentencing court had the authority to issue a fully concurrent sentence under 18 U.S.C. section 3584 and U.S. sentencing guideline section 5G1.3C, which governed the imposition of multiple terms of imprisonment. The Bureau of Prisons is required to implement that sentence but has made a mistake in failing to count the 19-month period between Mr. Barnes' state and federal sentencing. This court should reverse the holding of the district court for three reasons. First, the sentencing court's authority to impose a fully concurrent sentence is derived from the statute, guideline, and application notes. That authority gives the court broad discretion to make the sentence concurrent to achieve a just and appropriate sentence. What in the language of the court's order indicates the court intended to impose a fully concurrent sentence as opposed to simply a sentence that began to be concurrent from the day it was issued? Your Honor, defense counsel at the time of the sentencing hearing requests that the sentence be made to run concurrent with the decade and a half Mr. Barnes was serving in state custody. That coupled with the court's agreement of that framing and the government's lack of objection in that case demonstrates that everyone was talking about a sentence that was... Well, but the court speaks through its orders. So what in the court's order indicates an intent to impose what you refer to as a fully concurrent sentence? The sentencing order itself, Your Honor, captures the essence of the conversation at the sentencing transcript that better illuminates these points because of the dialogue between both the parties and the court itself. So what part of the order best captures the essence of what happened at the hearing? What language? The use of the term concurrent itself in the order reflects the discussion from the sentencing hearing that concurrent was used in a way that captures the entirety of the decade and a half, again, was the direct quote from the transcript, but captures the entirety of Mr. Barnes' state sentence. You do understand the problem, though. The fact that the judge used the term concurrent in the order doesn't say anything about when it begins. Correct, Your Honor, but in cases such as Rios and Ruggiano, the court has looked at the entirety of the circumstances of the proceedings in order to make a determination about what the intent was in a particular situation. Accordingly, looking at not only the order but also the sentencing transcript in that discussion illuminates not only defense counsel's request, which was repeated twice regarding the decade and a half, but also Judge Nickerson's framing of this inquiry, which was that he was using 5G1.3C to determine if it would be a concurrent, consecutive, or some combination thereof. Indicating his own framing was that it was a fully concurrent sentence, consecutive. So are you asking us to determine the intent of the sentencing court in the first instance? Do you want us to determine what the sentencing court's intent was? Your Honor, in Rios and Ruggiano, the Third Circuit determined that that was essentially legal in nature and was a determination that could be made upon plenary review by the Court of Appeal. In this particular situation, it was not an issue that was raised below by the government. So if we ruled in your favor, shouldn't the district court decide that in the first instance here, what the intent was? Again, Your Honor, the precedent of other circuits has determined that this is an essentially legal precedent. Except that it's not precedent. You understand. I think it's also important to note that in this situation, there was a 33-month period between the time Mr. Barnes submitted his habeas petition and a final determination by the district court. Because of that delay, if our calculations are approved by this court, Mr. Barnes would have been eligible for community release as of last year and fully released in May of this year. As such, we request the court consider its authority to make that determination so that there's no further delay. Although that doesn't really go to the question about the court's intent in using the term concurrent and what, if anything, cabins, which is sort of a threshold question. If I'm understanding your question correctly, Your Honor, you're asking about what in the record reflects the court's intent. No, no. I think the question is what in the court's order. Again, Your Honor, I can review the language again. But our position is that the consistent reading of concurrent from the order as associated with that broader dialogue during the sentencing hearing demonstrates that intent. Thank you. Thank you. Additionally, that broader framing of defense counsel's request, which was clearly for a fully concurrent sentence, was not objected to by the government. And noting that the sentencing court's authority to impose such a sentence is derived directly from the statute. The authority gives the court broad discretion to make a sentence concurrent to achieve a just and appropriate sentence. And there is no limit or prohibition in the statute or guideline that would prevent the court from achieving that goal by making a federal sentence fully concurrent. Additionally, this case illustrates why making the sentence fully concurrent can achieve the fairest result. Here, there is related conduct underlying Mr. Bryant's state and federal offenses that occurred within a one-month time period. If you calculate, help me understand just how this plays out because you have to look at a lot of different dates. Yes, Your Honor. If you factor in, as I recall, how did the district court sentence the 924C violation? The 924C violation was the weapons offense, and that had a standard term, but under count three is where there was a window. There was a window between 100 and Mr. Barnes. How did it run? Did it run concurrent? How did it run? Did it run? The two federal sentences were run consecutive, and those were both run concurrent to the state sentence that was being served. Okay. Thank you. The fact that the sentencing dates were scheduled 19 months apart should not be what determines how long Mr. Barnes spends in prison. Could I just go back to my question for a moment about the 924C? The reason I'm having a little bit of trouble with it is my understanding is that by statute, a 924C cannot run concurrently with any other sentence. So regardless of what the district court may have intended, it was not, as I understand it, and explain to me if I'm wrong, it couldn't by statute make the 924C run concurrently. It couldn't run by law. It could not run concurrently with the state sentence. That is not our understanding of the provision. Of 924C? But that is not a specific question that we briefed in this case. But I am asking you, and it might make a difference to the outcome. If you don't know, that's okay. Is that something I could answer for you upon rebuttal just to be able to fully confer with my notes? Mr. Barnes would have... And if I'm wrong, if my understanding is incorrect, that's fine too. You can explain it to me when you come back. Thank you. Just to additionally note, the Supreme Court in Sester affirms the authority of 3584, saying, quote, 3584 specifically addresses decisions about concurrent and consecutive sentences and makes no mention of the Bureau's role in the process. The implication is that no such role exists. Additionally, the government's interpretation of 3584 is flawed for several reasons. First, the government reads in the term portion where the statute and guidelines say undischarged term of imprisonment. That interpretation is incorrect because both under the statute and guidelines, I apologize, under the guidelines, the application notes demonstrate that there is the ability to run a fully concurrent sentence from the start of the preexisting term. Okay. What language are you relying on in the application notes for that? In application note 2, Your Honor, the term undischarged term of imprisonment is used across provisions B and C of 5G1.3, and in application note 2, which is specific to B, demonstrates that there is a fully concurrent sentence as we're describing possible under that application note, consistent reading of both undischarged term of imprisonment as well as a consistent reading of concurrent across both of those provisions. Okay, but doesn't it seems to me that application note might mean that the court could adjust the sentence for the period of imprisonment already served. In other words, if the court had wanted to give, was thinking that one year was appropriate for this sentence, but the defendant had already served six months on the state sentence, the court could then give the defendant a six-month sentence. You see what I'm saying? Rather than say, I give you a year to run fully concurrent. And maybe that's part of your argument of the ambiguity. But does the ambiguity of an application note get you anywhere as opposed to an ambiguity of the guideline itself? We do not see ambiguity, Your Honor. We recognize that application note 2 is specific to section C, or I apologize, is specific to subsection B. There is no parallel language that cabins the discretion of the court as to how to implement that, how to effectuate its authority under provision C. So our comparison of provisions B and C is for the canons of construction and consistent reading across the guidelines and statute, but the application note does not cabin the discretion of the court. Okay. Why is the Second Circuit wrong in its analysis? Tell us why, if you had been arguing that case in front of the Second Circuit. Yes, Your Honor. The Second Circuit relies on Furman, which first, that case, its reasoning relies on Whiteley, which is a Second Circuit case from before the sentencing guidelines were implemented. It was also an unpublished 1989 opinion. Right. But what's wrong with the analysis that the Second Circuit is relying on in that line of cases? It's what we were just speaking to, Your Honor, that concurrent is not, the Furman court does not address or reconcile the readings of B and C. And so under its analysis, the term concurrent can have one meaning in B and a completely different interpretation. Right. But wasn't the Second Circuit more concerned with the term undischarged term of imprisonment? That is also true. That reading of undischarged term, the analysis in Furman also inserts the word portion into its analysis. So you're saying that's what's wrong with the analysis? Yes. Both of those are substantively wrong with the analysis, in addition to its reasoning being borrowed from pre-guidelines authority. Additionally, I would argue the Third Circuit's reasoning is stronger in this case because it reconciles those provisions and is more closely aligned to the purpose of 5G1.3, to remedy disparities in sentencing, which the Supreme Court in wit noted, and which is also stated in the application notes themselves, regarding language to achieve a reasonable punishment and avoid unwanted disparity. Ms. Afstrin, are you finished with your answer? Yes. Before you, when you sit down, let me just point you a little more directly to my question. Under 924C provides that no term of imprisonment shall run concurrently with any other term of imprisonment imposed. And the Supreme Court has held that the plain language of 924C forbids a federal district court to direct that a term of imprisonment under that statute run concurrently with any other term of imprisonment, state or federal. And here, also when you sit down, if you look at JA134 and 135, which is the judgment in this case, the court, in fact, ordered the 924C to run consecutive with the other sentences. Yes, Your Honor. I will make sure to reference that. It would seem to affect the timing is what I think we're saying. Yes. Additionally, I would just like to note that another source for supporting authority is the consistent reading of the guidelines themselves over time. In the pre-Barnes version of the guidelines, we utilized hypothetical calculations to achieve a fully concurrent sentence. The current guidelines in the time period after Mr. Barnes, the word concurrent is combined with a list of factors. I apologize. It uses a downward departure. In the situation with Mr. Barnes, the word concurrent is combined with a list of factors but no specific methodology. And again, contrasting provisions B and C of 5G1.3 in this case, the provision B, a mandatory concurrent sentence, whereas C provides the authority and discretion for the court to exercise its judgment. And this court has also, in its Mosley decision, noted that the guidelines during Mr. Barnes' sentencing provide district courts more discretion than the former version. Additionally, the factors under the version applicable to Mr. Barnes include the type and length of the prior and discharge term, the time served, which court and when sentencing occurred, as well as any other circumstance. Getting back, though, what I'm worried about your position, Ms. Saffstrom, is that any time a district, under your analysis, any time a district court says to run concurrently, under your analysis, it has to be fully concurrent or we look to the sentencing hearing to determine what the court really meant. What's the position? You should look at the facts and circumstances, which in this case, based on the exchange demonstrated in the sentencing transcript, which can be read consistently with the order itself using the term concurrent, demonstrates the intent of this court to run it fully concurrent. However, that is not a... So that means that the order is not final. I mean, we're not according the order any kind of a conclusive weight if we have to go behind a court order to find out what the district court really intended. I mean, you see the problem that that presents, I'm sure. Yes, Your Honor, and the use of the term concurrent, this case certainly would have been easier on the question of intent if John Nickerson had been more explicit. Well, he was pretty explicit. Concurrent is pretty explicit. The question is can we read some ambiguity into that based on what was said during the hearing? Again, Your Honor, because the term concurrent itself can include both of those meanings, we should look to the sentencing transcript in this situation, which again is consistent with the order itself. And I will... I apologize for going over my notes. Not at all. We ask questions, and that's exactly the right thing to do. And you've reserved some time for rebuttal. Thank you, Your Honor. Are you finished? Pardon? Are you finished? Yes. Okay, thank you. Ms. Mencken? Yes, Your Honor. May it please the Court, the district court correctly denied Barnes' 2241 habeas petition, which challenged the BOP's computation of his federal sentence. So Barnes appeals on the issue of whether the BOP correctly denied federal sentence credit to time that was credited to a state sentence. So in this case, Barnes claims the BOP erred by failing to calculate the federal sentence to include 19 months that Barnes had served on a preexisting and unrelated state sentence. And that 19-month period ran from the date of Barnes' state sentence... Do you agree that... Well, apparently intended some part of the sentence to run concurrently. The government did not... So the government agreed to a federal sentence to run concurrently with the state sentence. The government did not agree to the federal sentence starting to run at the beginning of the preexisting state sentence. What about 924C? So there were two counts. Count 2 was the armed robbery and the count 3 was the use of a weapon. And so the sentencing court... And they were run consecutively. And they were run consecutively. So that total sentence, 230 months, was to run concurrently with the state sentence. Yes, I'm aware of that. My question is what's the impact on the argument of the fact it can't, if it's correct that 924C can't run concurrently with any other sentence, then at least that five years of the consecutive 924C can't have any other sentence run concurrently with it. Is that correct? I would agree with you, yes. Well, isn't that your argument? Yes. Yes. I mean, that was not specifically raised on appeal by Barnes. But I'm asking. Yes. Yes, we agree with that position. Also, two, the district court here recognized that concurrent means concurrent from the date of imposition. The earliest date a federal sentence can start or begin is on the date it's commenced. And so when a concurrent sentence is issued, it doesn't mean concurrent to the beginning of a preexisting state sentence. It means concurrent the date it's imposed going forward. Also, two, here the district court recognized that Barnes could not receive credit for this time period because it would have been an impermissible double credit under 18 U.S.C. 3585B. So that allows the BOP to grant prior custody credit to those defendants so long as that credit hasn't been already credited to another state sentence. So here Barnes had already received that credit on a state sentence. So he couldn't receive it on his federal sentence. He was prohibited for that reason. So here the district court correctly denied the 2241 petition on those grounds. Now, the argument that Barnes raises is that you need to find that the sentencing court nevertheless intended to run a fully retroactive concurrent sentence. And that's a question that goes to the sentencing court's intent and imposition of a sentence, which should be brought in a 2255 petition before the sentencing court, not in a 2241 petition. And beyond that, the remedy in this case would be for the sentencing court to reissue its order to grant an adjustment for Barnes on his sentence. The remedy is not ordering the Bureau of Prisons to give him credit for this time served because that would be an impermissible double credit under 3585B. However, if this court were to decide otherwise and wanted to look at the sentencing court's intent, the outcome would still be the same. Barnes would not be entitled to this 19-month credit. Now, Barnes relies on a 2002 case, Ruggiano v. Reich, out of the Third Circuit, to argue that this sentencing guideline, subsection C, gives the sentencing court the authority to make an adjustment on a federal sentence for the time that was already served. And so that Ruggiano case was effectively abrogated the next year by amendment to the sentencing guideline, application note E, which clarified that unlike subsection B cases, subsection C does not authorize an adjustment on the federal sentence for time already served on a preexisting sentence. And that's consistent with the purpose behind 5G1.3. Subsection B cases, that applies when the two offenses are related. So where the prior offense was fully taken into account in determining the federal offense level. So in a case like that, the defendant should receive credit for that time period served in order to avoid a double punishment because he's being punished for the same offense in two separate prosecutions. Subsection C cases are those where the offenses are unrelated. So where, in this case, all the parties agreed that subsection C applied. And in that case, because the offenses are not the same, a defendant should not be able to receive a credit for that time already served on an unrelated state sentence. And in this case, the sentencing court ordered the federal sentence to run concurrently with the sentence now being served in the state system. There was no mention by the sentencing court in its judgment order or its sentencing that this defendant was also to receive credit for time served. And that was the focus of the Third Circuit's opinion in Ruggiano. That sentencing court in Ruggiano specifically said this defendant is to get a concurrent sentence and is to also receive credit for time already served on that prior sentence. And that did not happen here. In this court, the sentencing court, if it had wanted to make an adjustment or give Barnes a departure to reflect this 19-month time period, it could have downwardly departed through a variance, but it did not do that. It gave Barnes a sentence that was in the middle of the guidelines range, not even at the bottom of the guidelines range. The only other thing I would like to address at this point is in Barnes' reply brief, they contend that the government waived the ability to raise counterarguments that were not raised to the district court below. And that would be a good argument to make if the government were the appellant in this case, but we're not. And so that proposition of waiver failing to raise the issue below pertains to appellants who have failed to raise the issue on appeal to the district court below, and therefore they cannot bring it up to this court. So in sum, this district court did not err. The Bureau of Prisons properly calculated the federal sentence. It ran a concurrent sentence that began on the date it was imposed and gave Barnes all prior custody credit that he was entitled to receive under the law. So for that reason, the district court's decision should be affirmed. Unless there are any other questions. Thank you very much. Ms. Astrom, you have some time for rebuttal. Thank you, Your Honor. First, to clarify regarding your previous inquiry of 924C, you are correct that that sentence did have to be consecutive. No, it didn't have to be. It has to be. It can't run concurrently to anything else. Correct. And those seven years took place from June 2011 to June 2017, which would have been six years with good time at the 85 percent ratio or would terminate in June 2018 if no good time was credited. And we can provide supplemental briefing that outlines the timing of these sentences to demonstrate that even without any good time credit, the calculation would only be June instead of May, as we had outlined in our briefing. Additionally, I'd like to make three other points regarding the government's response in this case. First, the government asserts that the court should have adjusted, but this court in Moseley recognized that there is no math requirement and that there isn't any Margiotti in the Second Circuit recognized that there's no particular verbal formula incantation that is required. Here, doing a downward departure would have actually, which was not explicitly authorized under the guidelines as it relates to Mr. Barnes, except in a very narrow circumstance outlined in Application Note 7, which would have led to the presumption by the court that it could not do a downward departure except for that narrow circumstance. As such, the court's remaining alternative was to set a timeframe within the guideline range and run that concurrently. Additionally, it's important to note that this is appropriately a 2241 petition. What we are challenging in this case is the Bureau's implementation of that sentence and not the application of the factors or something else to challenge the sentence itself. And the Supreme Court in Setzer also recognized that 2241 was the appropriate relief for this type of situation. Additionally, we are not debating in any way that this is a C case in the guidelines, simply drawing analogies between B and C that demonstrates the consistent use and reading of the term concurrent as well as undischarged term of imprisonment. Additionally, any ruling in this case applies narrowly to the 1995 to 2003 guidelines. Ultimately, the rule we are requesting this court adopt is that the sentencing court, when intending in issuing a concurrent order under the 1995 to 2003 guidelines, that it run concurrently from the start of the previously imposed sentence and that the Bureau must calculate that time within the imposition of the federal sentence. Given that Mr. Barnes would have been eligible for community release despite the questions regarding 1924C, would already be eligible for community release under either calculation, we request this court reverse the holding of the district court in determining that Judge Nickerson had both the authority to issue a fully concurrent sentence as well as the intent to do so as demonstrated within the sentencing transcript and the framing of both defense counsel and the judge. Ms. Safstrom, your time has expired. I apologize, Your Honor. Did you want to briefly summarize? Just to summarize, we request this court find that there was the appropriate authority and intent in this case. Thank you. Thank you very much. The court will ask the clerk to adjourn the court, sign the die, and come down and greet the counsel. But I do want to note that Ms. Prakash and Ms. Safstrom, you were court appointed, and we would like to very much express our appreciation for your able and conscientious representation before this court. Thank you. This honorable court will take a recess until this afternoon.
judges: Allyson K. Duncan, Barbara Milano Keenan, Stephanie D. Thacker